**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MICHAEL A. HARRINGTON,**

        **Plaintiff,**

**v.**                                          **Case No.  8:08-cv-1702-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**
_____/

**O R D E R**

      The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  For the reasons set out herein, the decision is affirmed.

**I.**

      Plaintiff was forty-two years of age at the time of his administrative hearing in August 2007.  He stands 6', 2" tall and weighed 242 pounds.  Plaintiff has a high school education.  His past relevant work was as a warehouse worker in the field of building restoration.  Plaintiff filed a protective application for disability benefits in March 2005, alleging disability as of January 30, 2005, by reason of injuries to his pelvis, femur, eye, head, ankle, and neck suffered in an automobile accident in 1985; headaches; and a psychological illness.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Plaintiff's mother, Dolly Allen, also testified on his behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he is unable to work due to dizziness, loss of balance, and light-headedness, all of which make him unable to work on ladders because he falls down. Additionally, he testified that his hands cramp up making it difficult for him to lift or carry more than ten pounds. By Plaintiff's account, he cannot walk a straight line because his legs and hips hurt; he experiences tingling and numbness in his feet and legs; and he stumbles back and forth when he walks. Plaintiff testified that the imbalance and stumbling began in 2003, and he was told it was caused by neuropathy from diabetes.[1]

Plaintiff was injured in an automobile accident in 1985 which resulted in injuries to his pelvic area in 26 different places, a broken right femur, a broken ankle, injuries to his neck, and damage to his face near his eye that required plastic surgery. Following this accident, Plaintiff continued to work for a number of years doing warehouse-type work for the family restoration business up until January 2005 when he had to leave that job because of balance problems.[2] Plaintiff testified that his warehouse work involved lifting heavy bags of

---

[1]Upon questioning by the ALJ, Plaintiff denied taking insulin for his diabetes, but then testified he was taking oral medication. (R. 441). It has been recommended that he quit smoking cigarettes. He smokes a half a pack per day. (R. 460).

[2]Plaintiff was self-employed for a period prior to 2005 in which he was detailing automobiles and pressure washing houses and driveways, but when that did not work out, he returned to the warehouse restoration-type work he had previously done. (R. 437).

cement and climbing ladders.  When he left his job in January 2005, Plaintiff also had problems with severe pain in his right hip, problems with his knees, dull pain in his right (dominant) wrist, his hands would "claw up," and he suffered from migraine headaches.  He was experiencing all of these problems in 2005, but they have gotten progressively worse.

Plaintiff currently uses a cane to help him walk because his right leg is an inch shorter than his left as a result of the 1985 accident.[3]  By his account, he can stand only ten to twenty minutes before starting to sway back and forth.  In an eight-hour day, he estimated that at most he could stand four hours, with the assistance of the cane.  Without the cane, he could stand a maximum of an hour and a half to two hours in an eight-hour day.  Plaintiff testified that he is bothered by sitting for periods longer than fifteen or twenty minutes.  Specifically, his lower back, hip, and legs bother him, and then when he tries to stand up after sitting, he has difficulty getting up because of pain in his hip, knees, back, and neck.  He estimates that in an eight-hour day, he could sit at most two hours.  He has difficulty lifting and carrying due to problems with his wrists, hands, and balance.  Also due to his imbalance, Plaintiff has frequently fallen, seven times in the past year.

Plaintiff first received mental health treatment in 1985 following a suicide attempt.  He again obtained such treatment in the early 1990s.  He testified to having similar feelings of wanting to commit suicide in 2004, but did not seek counseling then.  His most recent mental health treatment was in December 2005 for severe depression and anxiety.  His anxiety manifests itself in being nervous around people and feelings of being watched.  His anxiety

---

[3]He testified that he had left knee surgery in July 2006 because of pain in his left knee that resulted from his compensating for his right leg being shorter than his left.  (R. 447).

also causes him to get shaky, and sweaty. Additionally, he experiences anger, depression, and at times violence.[4]

As for his daily activities, Plaintiff testified that his mother and stepfather help him with cleaning, laundry, grocery shopping, and keeping track of his finances.[5] During the day, he watches television. He has no social life and stays at home most days. He tries to walk his dog, but does not get far. He has helped his stepfather on one occasion changing the brakes on his car and will detail the car every couple of months, but he has a hard time doing it. (R. 436-63).

Plaintiff's mother, Dolly Allen ("Allen"), also testified on his behalf. She sees her son daily as he had been living for the past two years in an apartment on her property. Prior to that, he lived in Ohio and was working for his sister. It was during that time frame that the sister observed Plaintiff's inability to work. The sister relayed problems with Plaintiff climbing ladders and falling when he walks. Since Plaintiff's return to Florida, Allen testified that he has gotten progressively worse. His loss of balance was the main thing she noticed first. In 2000, she observed that he could not walk a straight line, and his problems seemed to escalate after that. Allen testified that Plaintiff does not complain all the time, but she can see he is in pain. For example, when he tries to get up from a seated position on the floor, he has

---

[4]In 2005, Plaintiff stabbed his girlfriend and served time in prison as a result. (R. 456).

[5]He needs assistance with his finances due to difficulties focusing and concentrating. He also has problems with memory. Although he graduated from high school, he attended special education classes while there because whenever he would read something, he would need to re-read it ten to twelve times because he could not remember what he read.

to crawl over to a table and grab the table in order to lift himself up. She also observed that he is depressed, grouchy, and "out of sorts." By her account, he has no friends, is paranoid, and is always nervous. (R. 464-69).

Next, the ALJ took testimony from Teresa Manning, a vocational expert ("VE"). Upon a hypothetical of an individual with a high school education performing sedentary work with a sit/stand option, occasional postural limitations, no hazards or climbing, no temperature extremes, that is unskilled and low stress, with routine and repetitive tasks, and primarily working with things as opposed to people, the VE opined that there would be jobs in the national and local economy which are in accordance with those limitations. Such jobs include a ticket checker and final assembler. Upon the added limitation of the individual being unable to concentrate one-third to two-thirds of the day, the referenced jobs would be precluded. Additionally, if such individual could do no standing or walking during the course of his work, there would not be any jobs available to him in the national and local economy based upon a strict definition of "sedentary" according to the Dictionary of Occupational Titles. (R. 469-72).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Pertinent to this appeal, Plaintiff's last date insured was March 31, 2005.

By his decision of October 16, 2007, the ALJ determined that while Plaintiff has severe impairments related to anxiety, status post left knee surgery, right knee pain, diabetes, arthritis in the hip, and migraine headaches, he nonetheless had the residual functional capacity to perform a limited range of sedentary work. Upon this finding and the testimony

of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local

and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled.

(R. 13-21). The Appeals Council denied Plaintiff's request for review.[6]


## II.

In order to be entitled to Social Security disability benefits, a claimant must be

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental

impairment," under the terms of the Act, is one that "results from anatomical, physiological,

or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards. *See*

*id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

---

[6]In denying Plaintiff's request for review, the Appeals Council noted that it "looked at the additional material [Plaintiff] submitted dated May 6, 2006-February 20, 2008 from Florida Orthopedics Institute; December 17, 2007, from Dr. Bitar; and November 15-December 21, 2005, from South Florida Baptist Hospital. We also looked at the letters dated November 15, 2007, from Mark McMahon, Vice-President of H.M.H Restorations and February 15, 2008, from Michele Bowe." (R. 3). It further noted that March 31, 2005, was the date Plaintiff was last insured for disability benefits. The Appeals Council went on to state, "the information you submitted relates to a later time and does not affect the decision about whether you were disabled at the time you were last insured." *Id.* Although the Appeals Council stated that they were returning the materials submitted, it appears that a copy of the February 15, 2008, Affidavit of the Plaintiff's sister, Michele Bowe, is contained in the record. *See* (R. 8).

6

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Did the ALJ properly consider the opinions of Claimant's treating psychiatrist and treating neurologist;

(2) Did the ALJ properly consider all witness testimony; and

(3) Did the Appeals Council properly consider new material evidence.

On his first claim, Plaintiff challenges the weight the ALJ accorded three treating source opinions that Plaintiff contends would have precluded him from performing all work. First, Plaintiff points to a psychosocial assessment conducted at Northside Mental Health Center in May 2005, which indicated that his Global Assessment of Functioning (GAF) score was 40, both at that time and for the past year.[7] Thus, Plaintiff urges that the GAF score included a period prior to the date last insured. Second, Plaintiff urges the ALJ should have credited the opinion of his treating psychiatrist, Dr. Bedi, who rated his ability to perform work activities as "poor" in five areas in 2007. Third, Plaintiff contends the ALJ should have credited the June 2007 opinion of his treating neurologist, Dr. Bitar, who opined that Plaintiff could not work based on impairments that were longstanding. Because there is no contrary

---

[7]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.

opinions from an examining source, Plaintiff urges that the ALJ's decision was not supported by substantial evidence and therefore reversal is warranted. (Doc. 16 at 12-14).

The Commissioner counters that the ALJ's findings are adequately supported by the medical record and Plaintiff's reports of his daily activities. As to the GAF score of 40, the Commissioner disputes that a low GAF score requires a finding of disability. Rather, the Commissioner notes that an individual's GAF score on the date of a particular examination is merely a snapshot of his functioning on that day. In any event, the Commissioner urges that Plaintiff has failed to show that Beverly Burton, the employee of Northside Mental Health Center who performed the psychosocial assessment was an acceptable medical source in accordance with the regulations, and thus her opinion may not be used to establish the existence of an impairment. The Commissioner urges further that the ALJ clearly considered her assessment, but gave it little weight because she was not a treating or acceptable medical source. Even if the ALJ's failure to comment on the weight given to Ms. Burton's opinion was error, the Commissioner contends it was harmless and does not warrant reversal or remand. As to Dr. Bedi's opinion, the Commissioner argues that it sheds no light on Plaintiff's condition before the last date insured, and accordingly the ALJ was not required to give it any weight. Similarly, the Commissioner contends the ALJ was not required to credit Dr. Bitar's opinion because Plaintiff did not begin treating with the doctor until long after his insured status expired and the doctor's opinion was unsubstantiated by clinical or laboratory findings. Furthermore, the Commissioner urges that Plaintiff's testimony as to his daily activities conflicts with the reports of these doctors. (Doc. 18 at 7-12).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[8] *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Likewise, the ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Upon careful consideration, I conclude that Plaintiff is not entitled to relief on this claim. As for Ms. Burton's assessment of a GAF score of 40, I note at the outset that a low GAF score does not require a finding of disability. *See Seymore v. Apfel*, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work"); *accord Cox v. Apfel*,

---

[8]Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, at 1053.

No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000). Although Plaintiff suggests that the GAF score of 40 equates with a finding of mental disability, he cites no support for his suggestion and fails to demonstrate or allege that the mental limitations found by the ALJ are necessarily inconsistent with that score.[9] In any event, to the extent a GAF of 40 may be inconsistent with the ALJ's mental residual functional capacity determination, Plaintiff fails to demonstrate the ALJ erred by implicitly rejecting Ms. Burton's opinion.[10] He also fails to allege with specificity what mental limitations stemming from Ms. Burton's report the ALJ should have credited but did not. Further, the ALJ was not required to accord controlling weight to Ms. Burton's opinion. The treating physician rule is inapplicable with respect to Ms. Burton because she was not a treating physician. Rather, she is a therapist, which, under the regulations, is not considered an "acceptable medical source."[11] *See* 20 C.F.R. § 404.1513(d); SSR 06-03p, 2006 WL 2329939, *2 (S.S.A.). Additionally, contrary to Plaintiff's assertion that he had a treating relationship with Ms. Burton, the record reveals Ms. Burton's notation that while Plaintiff had applied for services in June 2004, he failed to show for the following intake appointment. Thus, it appears her statement that Plaintiff's highest

---

[9]The ALJ limited Plaintiff to routine and repetitive work involving one and two step instructions. (16). Further, in the hypothetical posed to the VE, the ALJ also included limitations for low stress and primarily working with things as opposed to people. (R. 470).

[10]The ALJ considered Ms. Burton's assessment and opinion that Plaintiff had a GAF score of 40 during the pertinent period. (R. 17-18). To the extent Plaintiff urges the ALJ erred by failing to state the weight accorded Ms. Burton's opinion, any error in that regard is harmless.

[11]Only "acceptable medical sources" may be considered treating sources whose medical opinions may be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d); SSR 06-03p, *2. Ms. Burton, however, is an acceptable "other source" to comment on how a claimant's impairments affect the claimant's ability to work. *See* 20 C.F.R. § 404.1513(d)(1).

GAF score in the past year was a GAF of 40 was not based on a treatment history but rather on her first examination of Plaintiff in June 2005. *See* (R. 369). For these reasons, I am unable to find that the ALJ reversibly erred with respect to his consideration of Ms. Burton's opinion.

As for Dr. Bedi's opinion, Plaintiff faults the ALJ for not crediting the treating psychiatrist's opinion as expressed in a form captioned "Psychiatric and Psychosocial Evaluation" dated June 28, 2007. Plaintiff is correct that the limitations identified therein appear to support a finding of disability. *See* (R. 314-18). However, Plaintiff ignores that the psychiatrist rendered this opinion more than two years after his insured status expired and there is no indication from his records that the limitations existed prior to that time. As such, I am unable to conclude that the ALJ erred in not fully crediting this doctor's opinion, and any error in not stating the weight accorded Dr. Bedi's opinion or fully crediting the opinion is harmless.[12] For similar reasons, I am unable to find that the ALJ erred by not according Dr. Bitar's opinion controlling weight. Again, Plaintiff is correct that the neurologist's opinion, as set forth in a form captioned "Medical Assessment of Ability to do Work Related Activities (Physical) dated June 29, 2007, appears to support a finding of disability. *See* (R. 175-76). Nonetheless, there is absolutely no indication that the doctor's opinion on Plaintiff's functional capacity relates back to the period at issue, i.e., prior to his date last

---

[12]It appears that the ALJ considered this report but erroneously attributed it to a state agency psychologist. *See* (R. 19). As for the weight accorded the opinion, he indicated that, "to the extent that the state agency opinions (sic) are consistent with the medical evidence of record, the undersigned concludes that they are persuasive." *See id.*

insured of March 31, 2005.[13]  Furthermore, the ALJ specifically addressed Dr. Bitar's opinion and discounted it on grounds that it was inconsistent with the medical record and Plaintiff's activities of daily living (R. 19) and Plaintiff does not contend those reasons are unsupported by substantial evidence.[14]

In sum, the ALJ was not required to accord significant weight to Ms. Burton's opinion.  While Drs. Bedi and Bitar were treating physician's whose opinions were entitled to controlling weight absent a showing of good cause to the contrary, their opinions post date Plaintiff's date last insured by more than two years and simply do not speak to the pertinent period of time in this case.  Thus, even assuming, *arguendo*, that the ALJ erred in addressing their opinions, the error is harmless.  Plaintiff fails to demonstrate an entitlement to relief on this claim.

By his second claim, Plaintiff urges that the ALJ failed to articulate reasons for accepting or rejecting his mother's testimony and state what weight he gave it.  Dolly Allen testified that her son lost his balance a lot and could not walk a straight line as early as 2000, with his problem escalating such that by 2005, it was "a lot worse."  She further testified that Plaintiff was depressed, grouchy, out of sorts, had no friends, always nervous, and very paranoid.  The ALJ discounted Plaintiff's testimony but only mentioned his mother's testimony without commenting on the weight attributed to it.  Where a disability finding is

_____

[13]Neither the Plaintiff nor the Commissioner assert that Plaintiff sought Supplemental Security Income payments such that these later records would support a finding of disability. *But see* (R. 54).

[14]Even if the reasons are unsupported or inadequate, given the date of the records I am unable to find that any related error warrants remand.

based upon subjective evidence and a credibility determination is critical as in the instant matter, Plaintiff urges that the ALJ was obliged to review all the evidence, including witness testimony, and state the weight given to it. Plaintiff submits that the ALJ's failure to comment on the weight attributed to the witness testimony was error warranting reversal and remand. (Doc. 16 at 14-15).

In response, the Commissioner submits that lay testimony that duplicates a plaintiff's non-credible testimony need not be specifically addressed by the ALJ. The Commissioner urges that the testimony of Dolly Allen did not add any significant information concerning Plaintiff's condition, but rather was a reiteration of Plaintiff's testimony. Thus, where the ALJ found Plaintiff's testimony to be not entirely credible, the Commissioner contends that ALJ implicitly rejected the mother's testimony which was unsupported and duplicative. Moreover, the Commissioner notes that the ALJ is not required to specifically refer to every piece of evidence. (Doc. 18 at 6-7).

An ALJ must "state specifically the weight accorded each item of evidence and the reasons for his decision." *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). A family member's testimony is evidence of a claimant's subjective allegations of pain or other complaints. *See Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983). However, where an ALJ fails to make an explicit credibility determination as to a family member's testimony, no error will result if the credibility determination was implicit in the rejection of the claimant's testimony. *Allen v. Schweiker,* 642 F.2d 799 (5th Cir.1981) (Unit B).[15]

---

[15]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Upon review of the decision and the testimony from the administrative hearing, I am unable to conclude that the ALJ erred in the manner claimed by Plaintiff. As indicated by Plaintiff, although the ALJ mentioned his mother's testimony, the ALJ did not state the weight accorded her testimony. Undoubtedly, it would have made for a clearer decision had the ALJ done so. However, review of Ms. Allen's testimony reveals that it largely corroborated Plaintiff's testimony, which the ALJ explicitly discounted. Notably, Plaintiff does not challenge on this appeal the ALJ's assessment of his credibility. In these circumstances, the explicit credibility determination as to Plaintiff's testimony sufficiently implies a rejection of his mother's testimony as well.[16] *See Allen,* 642 F.2d at 801.

By his final claim, which Plaintiff captions as "Did the Appeals Council Properly Consider New Material Evidence," Plaintiff contends that records submitted to the Appeals Council, albeit dated after the date last insured, described continuing impairments which were all part of his condition prior to his last date insured and should not have been rejected and returned to him.[17] According to Plaintiff, these medical records[18] were consistent with a

[16]The cases cited by Plaintiff on this point are distinguishable. Neither *Tieniber* nor *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982), involved an ALJ's explicit rejection of the claimant's testimony and a clearly implied rejection of the corroborative testimony of a family member. Plaintiff's citation to *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990), is also unpersuasive. Although the court in that case remanded the claimant's case and directed the ALJ to address the witness testimony, the reversal was on other grounds.

[17]Plaintiff notes that, with the exception of his sister's affidavit, none of these records appear in the administrative transcript.

[18]In summary, Plaintiff states that Dr. Bitar's December 13, 2007, letter reiterated his opinion that Plaintiff was unable to work; records from Florida Orthopedic Institute dated October 2007 through February 2008 revealed Plaintiff had undergone surgery on his left knee for ACL and lateral meniscal tears but arthritis prevented ACL reconstruction; a letter dated January 2008 from Plaintiff's nurse practitioner at Suncoast Community Health Center

greater degree of impairment than found by the ALJ and further support his credibility (and his mother's) as to the degree of his impairments. Next, Plaintiff cites a string of cases discussing when an ALJ should obtain the advice of a medical advisor to determine the onset date of disability and he sets forth the holding in *McManus v. Barnhart*, Case No. 5:04-cv.67-O-GRJ, 2004 WL 3316303 (M.D. Fla. Dec. 14, 2004). According to Plaintiff, the district court in that case held, "because the issue of onset is inextricably tied to a determination of disability in cases of progressive condition, the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the steady progressive impairment constituted a disability prior to the date last insured," and that the ALJ erred by failing to consult a medical expert regarding the onset date of disability. Finally, he summarily concludes that "[t]his reasoning is equally applicable here." (Doc. 16 at 15-18).

The Commissioner counters that the Appeals Council properly returned the evidence Plaintiff submitted to it because the records did not relate to the relevant time period and so indicated to the Plaintiff in accordance with the regulations.[19] The Commissioner notes that these additional medical records were dated after the date of the ALJ's decision and pertained

---

revealed continued treatment for ataxia, weakness, balance/coordination problems and the opinion that Plaintiff was unable to work; and the affidavit of his sister/employer reveals that she fired Plaintiff because of his inability to work due to balance problems, which occurred prior to the expiration of his insured status. *See* (Doc. 16 at 16).

[19]In support, the Commissioner cites to 20 C.F.R. §§ 404.970(b), 404.976(b). While not argued by Plaintiff, the Commissioner notes that the returning of the records at issue does not violate the recent holding of the Eleventh Circuit in *Ingram v. Commissioner of Social Security*, 496 F.3d 1253 (11th Cir. 2007), because the evidence was returned and never became a part of the record. *See* (Doc. 18 at 14, n.11).

to a time period years after the date last insured.  As to the affidavit from Plaintiff's sister,[20] the Commissioner urges that her statements about Plaintiff's difficulties with balance and walking are duplicative of that of the Plaintiff's and his mother's testimony, which testimony the ALJ considered in making his findings that Plaintiff was limited to a reduced range of *sedentary* work.  Thus, the Commissioner contends that the testimony/statements of Plaintiff's sister adds nothing new and would not change the decision in this matter.  Moreover, even if there was a failure by the Appeals Council to consider the affidavit from Plaintiff's sister, the Commissioner urges that any failure was, at most, harmless error, and a remand would serve no practical purpose.  (Doc. 18 at 13-15).

As an initial matter, I must note that Plaintiff's arguments on this claim are unclear and poorly developed both factually and legally.  Consequently, the claim is subject to being disregarded for insufficient development.  *See* Scheduling Order (Doc. 15).  In any event, I find that Plaintiff is not entitled to relief regardless of the constructive accorded his arguments.  As I read Plaintiff's arguments, he challenges the Appeals Council's return of the records submitted to it and the failure of the Appeals Council (or the ALJ) to recognize the necessity of obtaining testimony from a medical advisor/expert.

As to the first argument, I am obliged to conclude that Plaintiff fails to demonstrate that the Appeals Council reversibly erred by returning to Plaintiff the records outlined

---

[20]As discussed above, despite the representations by the Appeals Council that the evidence submitted was being returned, the affidavit of Plaintiff's sister is nevertheless contained in the record.  *See* (R. 8).

above.[21]  Such was done in conformity with the applicable regulations based on the Appeals Council's determination that the records did not relate to the issue of Plaintiff's disability on his date last insured.  Even if the new medical evidence reflected a worsening of Plaintiff's ataxia and lack of coordination and balance, and a continuing and even worsening in his left knee pain, such would not reflect on his condition at the time pertinent to his March 2005 application.[22]  Finally, it is worth noting that it does not even appear that Plaintiff has a right to appeal or challenge the action of the Appeals Council in returning the records to him.

As for the second argument, it appears that Plaintiff is faulting the ALJ for not employing a medical expert given the progressive nature of his conditions and citing to the new evidence he submitted to the Appeals Council to bolster his contention that his ataxia and mental impairment were progressive conditions that had worsened.  Unfortunately, Plaintiff makes no additional argument or showing that the failure to do so here was contrary to the cited authorities or the applicable regulation.  My review of the matter reveals that it was not.  Social Security Ruling ("SSR") 83-20 prescribes the policy and procedure by which the Commissioner should determine the onset date of disability under the provisions of Titles II and XVI of the Social Security Act and implementing regulations.  *See* SSR 83-20, 1983 WL 31249, * 1 (S.S.A.).  The ruling provides in pertinent part:

---

[21]The affidavit/letter from Plaintiff's sister did reflect on the pertinent period and should not have been rejected.  The harm is minimal as her affidavit remained in the record.

[22]This conclusion appears conceded by Plaintiff who acknowledges that the relevance of such evidence was "doubtful."  (Doc. 16 at 11).

Onset in Disabilities of Nontraumatic Origin

In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity.

\*\*\*

With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . .

\*\*\*

Precise Evidence Not Available--Need for Inferences

\*\*\*

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgement, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20, * 2-3.[23]  It does not appear that the Eleventh Circuit has addressed or applied the provision of SSR 83-20 at issue in this case, i.e., that which addresses when an ALJ should obtain the services of a medical advisor at a hearing.  However, all circuits that have addressed this issue have concluded that an ALJ must call a medical advisor to assist in determining the claimant's onset date only where there is no contemporaneous medical documentation and the evidence [regarding the slowly progressive impairment] is ambiguous as to the possibility that the onset of disability occurred before the expiration of the claimant's

---

[23]The Social Security Administration's rulings are not binding on this court, however, they are accorded deference.  *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

insured status.  *See Newell v. Comm'r of Social Security*, 347 F.3d 541, 548-49 (3d Cir.

2003); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 362-

63 (5th Cir. 1993); *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 836-37 (6th Cir.

2006); *Pugh v. Bowen*, 870 F.2d 1271, 1278 n. 9 (7th Cir. 1989); *Grebenick v. Chater*, 121

F.3d 1193, 1201 (8th Cir. 1997); *Morgan v. Sullivan*, 945 F.2d 1079, 1082-83 (9th Cir. 1991);

*Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995); *see also May v. Social Security Admin.*

*Comm'r*, 125 F.3d 841, 1997 WL 616196, * 1 (1st Cir. 1997) (unpublished); *Thomas v.*

*Chater*, 104 F.3d 356, 1996 WL 730490, * 2 (2d Cir. 1996) (unpublished).

By my consideration, the pertinent medical record, while scant, was adequate to

permit the ALJ to determine that Plaintiff was not disabled *as of his date last insured* and a

medical advisor was not necessary on this application for disability benefits.  To this extent,

the decision of the ALJ is appropriately affirmed.[24]


IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

---

[24]Furthermore, it appears that while the Eleventh Circuit has not weighed in on
whether medical expert testimony is required when the medical record reveals that disability
arose well after a claimant's insured status expired, at least one district court in this circuit has
concluded that it is not.  *See Thorton v. Astrue*, No. CV507-073, 2009 WL 671307, at *7
(S.D. Ga. Mar. 13, 2009); *see also Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997);
*Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004); *Sam v. Astrue*, 550 F.3d 808, 810-11
(9th Cir. 2008); *Hill v. Astrue*, No. 07-4226, 2008 WL 3339174, at *4 (10th Cir. 2008)
(unpublished).

otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 29th day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record